J-S19002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.L.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 196 WDA 2021 |

Appeal from the Decree Entered January 4, 2021
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s):  31A-2020 OC

| | | |
|---|---|---|
| IN RE: G.M.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: F.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 197 WDA 2021 |

Appeal from the Decree Entered January 4, 2021
In the Court of Common Pleas of Jefferson County Orphans' Court at
No(s):  OC 30A-2020

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED:  July 30, 2021**

F.M. ("Father") appeals from the Decrees entered on January 4, 2021,

by the Court of Common Pleas of Jefferson County, involuntarily terminating

his parental rights with respect to his daughters, G.M.M., born in May 2014,

_____

[*] Retired Senior Judge assigned to the Superior Court.

and N.L.M., born in February 2019 ("Children").[1]  Because the record supports the decision of the orphan's court, we affirm the Decrees.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

We glean the following factual and procedural history from the orphans' court's opinion and the certified record.  On August 6, 2019, when the Children were five years old and six months old, respectively, Jefferson County Children and Youth Services ("CYS") obtained emergency custody of Children due to reports of alleged sexual abuse and neglect of Children by Father.  The court conducted a shelter care hearing on August 16, 2019 and adjudicated Children dependent on October 30, 2019.  Father was subsequently cleared of any wrongdoing.

At the time of the adjudication, the court set Children's placement goal as reunification.  CYS prepared a family service plan, which directed Father to comply with a series of objectives.  These included obtaining drug and alcohol abuse, mental health, and sex offender risk assessments; and acquiring stable and adequate housing.  Father was compliant with the service plan through February 2020.

In March 2020, however, Father suffered a mental health crisis.  Father voluntarily committed himself to inpatient mental health treatment, but he left

---

[1] The court also entered Orders voluntarily terminating the parental rights of Children's mother, M.M. ("Mother"), on December 23, 2020.  Mother did not appeal the Orders terminating her parental rights, nor did she participate in this appeal.

after only a few days. His mental health remained unstable, and he suspended his visits with Children temporarily out of concern that his mental health might adversely affect them. While Father began outpatient counseling after leaving inpatient treatment, the onset of the COVID-19 pandemic prevented him from attending sessions in person, and he lacked the motivation to continue with remote sessions. Father participated in only two remote sessions before his provider discharged him no later than May 2020.

On November 9, 2020, CYS filed Petitions to terminate Father's parental rights to Children involuntarily. The court held a hearing on the Petitions on December 14, 2020.[2] At the time of the hearing, the Children were over six and one-half years old and nearly two years old, respectively. The hearing began with a colloquy addressing Mother's decision to terminate her parental rights to Children voluntarily. CYS then presented the testimony of its caseworker, Cheryl Miller. Father, represented by counsel, testified on his own behalf.

On January 4, 2021, the orphans' court filed and Opinion and entered Decrees involuntarily terminating Father's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(5), (8) and (b). Thereafter, Father filed timely Notices

---

[2] The orphans' court appointed Danielle Melillo, Esq., to serve as legal counsel for Children and Kerith Strano Taylor, Esq., to serve as guardian *ad litem* for Children.

of Appeal and Concise Statements of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a Rule 1925(a) Opinion.[3]

## ISSUES ON APPEAL

Father raises the following issue for our review: "Whether the [orphans' c]ourt made an error of law or abused its discretion in terminating [Father's] parental rights?" Father's Brief at 5.

## LEGAL ANALYSIS

When reviewing a decree involuntarily terminating parental rights, this Court must accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, appellate courts then determine if the orphans' court made an error of law or abused its discretion. *Id.* Where the competent record evidence supports the court's findings, we must affirm the orphans' court decree even though the record could support an opposite result. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

---

[3] In his initial Concise Statements, Father indicated he wished to challenge the Orders changing Children's placement goals to adoption. The orphans' court issued brief Rule 1925(a) Opinions on February 3, 2021, explaining that it had changed the goals to adoption by Orders dated October 28, 2020, and that Father could not challenge those Orders now by appealing its termination Decrees. Father responded by filing amended Concise Statements on February 8, 2021, in which he challenged only the termination of his parental rights.

"The [orphans'] court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73–74 (Pa. Super. 2004) (citations omitted). This Court defers to the orphans' court, as it often has "first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, *supra* at 267 (citations and quotation marks omitted). Importantly, "[t]he court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time . . . in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care." *In re Adoption of R.J.S.,* 901 A.2d 502, 513 (Pa. Super. 2006) (emphasis in original; citations omitted).

In addressing petitions to terminate parental rights involuntarily, the Adoption Act requires the orphans' court to conduct a bifurcated analysis. *See* 23 Pa.C.S. § 2511(a) and (b). The court first focuses on the conduct of the parent, and if the party seeking termination presents clear and convincing evidence that the parent's conduct meets one of the grounds for termination set forth in Section 2511(a), the court will then analyze whether termination of parental rights will meet the needs and welfare of the child, *i.e.*, the best interests of the child, pursuant to Section 2511(b). The courts must examine the existence of the child's bond with the parent, if any, and the potential

- 5 -

effect on the child of severing such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). As this Court has emphasized, "a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

While the orphans' court here found CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(5), (8) and (b), we need only agree with its decision as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

**Termination Pursuant to Section 2511(a)(8)**

We first conclude the orphans' court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(8). Section 2511(a)(8) provides for termination of parental rights where the petitioner proves by clear and convincing evidence that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement," and "the conditions which led to the removal or placement of the child continue to exist[.]" 23 Pa.C.S. § 2511(a)(8); *In re C.L.G.*, 956 A.2d 999, 1004 (Pa. Super. 2008) (*en banc*). In addition, the petitioner must prove

that termination of parental rights "would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(8).

Section 2511(a)(8) creates a three-prong test requiring consideration of (1) whether the child has been removed from the parent for twelve months or more, (2) whether the conditions which led to the removal continue to exist, and (3) whether termination would best serve the child's needs and welfare. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). As to the second prong of Section 2511(a)(8), the statute does not require that the court evaluate of a parent's willingness or ability to remedy the conditions which led to the removal of his or her child. *In re Adoption of R.J.S.*, *supra* at 511. Further, this Court defines the relevant "conditions" broadly. *See In re C.L.G.*, *supra* at 1006-07 (Pa. Super. 2008) (*en banc*) (concluding that a parent failed to remedy the conditions which led to her child's removal when the removal resulted primarily from the parent's positive drug test for cocaine and the parent was later incarcerated for drug offenses). Regarding the third prong, it is important to note that the needs and welfare analysis pursuant to Section 2511(a)(8) is distinct from the needs and welfare analysis pursuant to Section 2511(b), and courts must complete their Section 2511(a)(8) needs and welfare analysis before reaching Section 2511(b). *Id.* at 1009.

Here, Father concedes CYS met the first prong of Section 2511(a)(8), that Children were removed from his care for longer than twelve months, and he does not attempt to challenge the third prong of Section 2511(a)(8), that

terminating his parent rights would best serve Children's needs and welfare.[4] Father's Brief at 9. Father focuses on the second prong of Section 2511(a)(8), arguing CYS failed to establish that "the conditions which led to the removal or placement of" Children continued to exist. Father's Brief at 8-9. He asserts the court removed Children due to reports of alleged sexual abuse and neglect, but that he was cleared of wrongdoing, and the reports no longer presented an issue at the time of the termination proceedings. *Id.* at 9-12.

In its Opinion, the orphans' court observed, pursuant to the first prong of Section 2511(a)(8), that Children entered foster care in August 2019, and that they had remained in care for well over twelve months at the time CYS filed its Petitions on November 9, 2020. Orphans' Ct Op., 1/4/21, at 1, 4. The court also found, pursuant to the third prong of Section 2511(a)(8), and as discussed in greater detail during our analysis of Section 2511(b), that terminating Father's parental rights would best serve Children's needs and welfare. *Id.* at 6.

Regarding Father's arguments on appeal, the orphans' court rejected his narrow reading of Section 2511(a)(8) and found his failure to address his mental health needs demonstrated that the conditions which led to Children's removal continued to exist. *Id.* at 5, relying on *In re T.M.T.*, 64 A.3d 1119, 1222 (Pa. Super. 2013). In *T.M.T.*, the children entered foster care because

---

[4] As discussed below, Father does challenge the court's Section 2511(b) needs and welfare determination.

of concerns regarding medical neglect and poor housing conditions. This Court affirmed termination of the appellant's parental rights pursuant to Section 2511(a)(8), emphasizing his failure to comply with the service plan as a whole, including issues such as substance abuse and inconsistent attendance at visitation. *Id.* at 1126-27. Likewise, in this case, the court observed that addressing mental health was a critical part of Father's service plan for much of Children's dependency. Orphans' Court Opinion, 1/4/21, at 5. The court emphasized the testimony of Ms. Miller, who explained that stabilizing Father's mental health was "imperative to reunification, and Father, by failing to do so, became substantively non-compliant with his service plan." *Id.*

In addition, the orphans' court rejected as incredible Father's testimony that he was seeking mental health treatment at the time of the termination proceedings. *Id.* at 4. The court credited the testimony of Ms. Miller that she counselled Father to reengage in mental health treatment, and the court found that Father did not comply. *Id.* at 3-4. The court reasoned that, had Father really been looking for treatment, the prudent thing to do would have been to reach out to Ms. Miller or the case aide. *Id.* at 4. Because Father did not reach out, the court continued, "the evidence strongly implies . . . that he was not even trying." *Id.*

Having reviewed the record, we conclude it supports the findings of the orphans' court that more than twelve months have elapsed since Children's removal from Father's care, that the conditions which led to the removal of

Children continue to exist, and that termination of parental rights would best serve the needs and welfare of Children. Thus, Father is not entitled to relief.

**Termination Pursuant to Section 2511(b)**

We further conclude, pursuant to Section 2511(b), that the orphans' court properly determined termination of Father's parental rights would be in the best interests of Children. With respect to Section 2511(b), the court must consider whether termination of parental rights would best serve Children's developmental, physical, and emotional needs and welfare. *See* 23 Pa.C.S. § 2511(b). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

It is sufficient for the orphans' court to rely on the opinions of social workers and caseworkers when evaluating the impact termination of parental rights will have on a child. *Id.* The court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. *See In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of a child. *In re Z.P.*, *supra* at 1121.

Father argues the orphans' court erred or abused its discretion because it failed to place adequate weight on the bond that he shares with Children and the effect that severing that bond would have. Father's Brief at 13. Father

notes he participated in a bonding evaluation, which confirmed that he shares a bond with Children. *Id.* at 13-14. Father also argues the court improperly focused its analysis on the bond between Children and the foster family, rather than the bond between Children and him. *Id.* at 15.

The orphans' court found N.L.M. has no recollection of living with Father, and that her pre-adoptive foster family is the only family she has ever known. Orphans' Court Opinion, 1/4/21, at 6. Therefore, the court reasoned that termination of Father's parental rights would be "unquestionably in her best interests." *Id.* Regarding G.M.M., the court explained it did not "discount" the bond she has with Father, but that she demonstrated a positive emotional response after it changed the placement goal to adoption and her visits with Father ended, which showed that her emotional wellbeing was not contingent on maintaining her relationship with Father, and that ending that relationship would not be harmful to her. *Id.* The court emphasized the care Children receive from their foster family and the bond they have established with them. *Id.* Importantly, as explained above, it was within the court's discretion to weigh Children's bond with Father against other factors, including their bond with the foster family. *In re N.A.M.*, *supra* at 103.

Our review of the record supports the orphans' court's findings. We do not discern an error of law or abuse of discretion with respect to the court's conclusion. Thus, we affirm the court's determination that the involuntary termination of Father's parental rights is in the best interests of Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/30/2021